DA 09-0388

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 26

————————————

PLAN HELENA, INC., a Montana
nonprofit corporation, and ALAN
NICHOLSON,

        Plaintiffs and Appellants,                    O P I N I O N

    v.                                          AND

HELENA REGIONAL AIRPORT
AUTHORITY BOARD and LEWIS                O R D E R
AND CLARK COUNTY,

        Defendants and Appellees.

————————————

¶1    This is an appeal by Plan Helena, Inc. and Alan Nicholson (collectively, Plan Helena) from two orders of the First Judicial District Court, Lewis and Clark County. In the first, dated March 18, 2009, the District Court granted summary judgment in favor of Helena Regional Airport Authority Board (HRAA) and Lewis and Clark County (the County). In the second, dated May 13, 2009, the District Court denied Plan Helena's motion to alter or amend the court's March 18 order.

¶2    We conclude that this case does not present a case or controversy, but rather calls for an advisory opinion. Accordingly, we vacate the District Court's two orders, dismiss this appeal, and remand for entry of an order dismissing the case as nonjusticiable.

## BACKGROUND

¶3    By way of a brief background, HRAA owns approximately 1,300 acres of land. In October 2008, Plan Helena filed suit against HRAA to enjoin and declare unlawful

1

HRAA's proposed lease of nine acres of this land to Blue Cross Blue Shield of Montana (BCBS). The lease was intended to cover land adjacent to the Helena Regional Airport and to remain in effect for 40 years. Plan Helena contended that the proposed lease violated § 67-11-232, MCA. Ultimately the litigation involved the interpretation of § 67-11-232, MCA, along with § 67-11-211, MCA, and other statutes in the Airport Authorities Act (Title 67, chapter 11, MCA). The District Court framed the precise question before it as "what statutory scheme governs the lease of property owned by [HRAA] to private commercial businesses whose activities are not specifically aeronautically related?"

¶4     BCBS was permitted to intervene in November 2008. In December 2008, HRAA commenced a separate proceeding for declaratory judgment, and that suit was later consolidated with Plan Helena's suit. In February 2009, the County was permitted to intervene, and it has remained a party in this case.

¶5     Critical to our decision here, BCBS ultimately determined not to go through with the lease and was dismissed from this case in February 2009 shortly before a hearing on the parties' cross-motions for summary judgment. The District Court posited that BCBS's decision would render the matter moot; however, the parties desired a ruling on the merits, and the court thus proceeded to issue the orders now before us on appeal, essentially giving an advisory opinion as to the applicability of the above statutes.

**DISCUSSION**

¶6     The judicial power of Montana's courts, like the federal courts, is limited to "justiciable controversies." *See Greater Missoula Area Fedn. v. Child Start, Inc.*, 2009

2

MT 362, ¶ 22, 353 Mont. 201, 219 P.3d 881. Article III of the United States Constitution restricts the judicial power of the federal courts to "cases" and "controversies." *See* U.S. Const. art. III, § 2, cl. 1. Likewise, Article VII, Section 4 of the Montana Constitution, in relevant part, confers original jurisdiction on district courts in "all civil matters and cases at law and in equity." Mont. Const. art. VII, § 4(1). This Court has stated that the "cases at law and in equity" language of Article VII, Section 4(1) embodies the same limitations as are imposed on federal courts by the "case or controversy" language of Article III. *See Olson v. Dept. of Revenue*, 223 Mont. 464, 469-70, 726 P.2d 1162, 1166 (1986); *Seubert v. Seubert*, 2000 MT 241, ¶ 17, 301 Mont. 382, 13 P.3d 365. Accordingly, federal precedents interpreting the Article III requirements for justiciability are persuasive authority for interpreting the justiciability requirements of Article VII, Section 4(1). *See e.g. Armstrong v. State*, 1999 MT 261, ¶¶ 6-13, 296 Mont. 361, 989 P.2d 364.

¶7    The United States Supreme Court has explained that the words "cases" and "controversies" embody two complementary but somewhat different limitations:

> In part those words limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. And in part those words define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government. Justiciability is the term of art employed to give expression to this dual limitation placed upon federal courts by the case-and-controversy doctrine.

*Flast v. Cohen*, 392 U.S. 83, 95, 88 S. Ct. 1942, 1950 (1968).

¶8    "A justiciable controversy is one upon which a court's judgment will effectively operate, as distinguished from a dispute invoking a purely political, administrative,

3

philosophical or academic conclusion." *Clark v. Roosevelt County*, 2007 MT 44, ¶ 11, 336 Mont. 118, 154 P.3d 48; *accord Seubert*, ¶ 20; *Gryczan v. State*, 283 Mont. 433, 442, 942 P.2d 112, 117 (1997). The central concepts of justiciability have been elaborated into more specific categories or doctrines—namely, advisory opinions, feigned and collusive cases, standing, ripeness, mootness, political questions, and administrative questions—each of which is governed by its own set of substantive rules. *Greater Missoula*, ¶ 23. Two of these doctrines—mootness and advisory opinions—are implicated and dispositive here.

¶9  We consistently have held that this Court does not render advisory opinions. *See Serena Vista, LLC v. Dept. of Nat. Resources and Conserv.*, 2008 MT 65, ¶ 14, 342 Mont. 73, 179 P.3d 510; *Clark*, ¶ 11; *State v. Holland*, 1998 MT 67, ¶ 6, 288 Mont. 164, 955 P.2d 1360; *State ex rel. Fletcher v. Dist. Court*, 260 Mont. 410, 419, 859 P.2d 992, 997 (1993); *Hardy v. Krutzfeldt*, 206 Mont. 521, 524-26, 672 P.2d 274, 275-76 (1983). In *Chovanak v. Matthews*, 120 Mont. 520, 525-26, 188 P.2d 582, 584-85 (1948), we explained that the "cases" and "controversies" that are within the judicial power to determine do not include "abstract differences of opinion." Citing cases from the United States Supreme Court, we observed that a "controversy," in the constitutional sense, is one that is "definite and concrete, touching legal relations of parties having adverse legal interests"; it is "a real and substantial controversy, admitting of specific relief through decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts, or upon an abstract proposition." *Chovanak,*

4

120 Mont. at 526, 188 P.2d at 585 (emphasis omitted). The foundation for this restriction against advisory opinions has been explained by the Supreme Court as follows:

> When the federal judicial power is invoked to pass upon the validity of actions by the Legislative and Executive Branches of the Government, the rule against advisory opinions implements the separation of powers prescribed by the Constitution and confines federal courts to the role assigned them by Article III. However, the rule against advisory opinions also recognizes that such suits often are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaced situation embracing conflicting and demanding interests. Consequently, the Article III prohibition against advisory opinions reflects the complementary constitutional considerations expressed by the justiciability doctrine: Federal judicial power is limited to those disputes which confine federal courts to a role consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process.

*Flast*, 392 U.S. at 96-97, 88 S. Ct. at 1950-51 (citations and internal quotation marks omitted).

¶10 The mootness doctrine is closely related to these principles. Under that doctrine, the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness). *Greater Missoula*, ¶ 23; *Havre Daily News, LLC v. City of Havre*, 2006 MT 215, ¶ 31, 333 Mont. 331, 142 P.3d 864. If the issue presented at the outset of the action has ceased to exist or is no longer "live," or if the court is unable due to an intervening event or change in circumstances to grant effective relief or to restore the parties to their original position, then the issue before the court is moot. *Greater Missoula*, ¶ 23.

¶11 A court lacks jurisdiction to decide moot issues or to give advisory opinions insofar as an actual "case or controversy" does not exist. *See Greater Missoula*, ¶ 23;

5

*Seubert*, ¶ 19; *Dennis v. Brown*, 2005 MT 85, ¶¶ 8-9, 326 Mont. 422, 110 P.3d 17. It should also be remembered here that jurisdictional issues transcend procedural considerations. *Stanley v. Lemire*, 2006 MT 304, ¶ 31, 334 Mont. 489, 148 P.3d 643. Furthermore, courts have an independent obligation to determine whether jurisdiction exists and, thus, whether constitutional justiciability requirements (such as standing, ripeness, and mootness) have been met. *See Stanley*, ¶¶ 30-32; *Dennis*, ¶ 8; *Armstrong*, ¶ 4; *Ballas v. Missoula City Bd. of Adjustment*, 2007 MT 299, ¶¶ 15-16, 340 Mont. 56, 172 P.3d 1232. If a court determines that it lacks jurisdiction, then it may take no further action in the case other than to dismiss it. *Thompson v. Crow Tribe of Indians*, 1998 MT 161, ¶ 12, 289 Mont. 358, 962 P.2d 577; *see also e.g. Shamrock Motors, Inc. v. Ford Motor Co.*, 1999 MT 21, 293 Mont. 188, 974 P.2d 1150 (a case that has become moot must be dismissed). Consequently, it is necessary in this case that we determine, as a preliminary matter, whether a case or controversy exists.

¶12 We conclude that the District's Court's initial instinct was correct. Once BCBS determined not to go through with the lease of HRAA land and was dismissed from the case, the dispute over the interpretation of §§ 67-11-211 and -232, MCA, and other statutes in the Airport Authorities Act became moot. As a result, the District Court no longer had before it a justiciable case or controversy; and it was required, therefore, to dismiss the action at that point. *Shamrock Motors*, ¶ 22. In proceeding nevertheless to rule on the merits of the parties' dispute, the court improperly rendered an advisory opinion—i.e., one advising what the law would be upon a hypothetical state of facts or

upon an abstract proposition, not one resolving an actual "case or controversy." *See Chovanak*, 120 Mont. at 526, 188 P.2d at 585.

¶13    For the same reasons, we must dismiss this appeal. The parties essentially ask us to rule on the correctness of the District Court's advisory opinion, relying as that court did on hypothetical facts and abstract propositions. This we may not do. As already noted, the request for an advisory opinion implicates the question of justiciability. *See Greater Missoula*, ¶ 23. Accordingly, such a request presents a threshold question which this Court must raise and address sua sponte—even if, as here, it is not raised by the litigants. *See Stanley*, ¶ 32; *Dennis*, ¶ 8; *Jumping Rainbow Ranch v. Conklin*, 162 Mont. 128, 129, 509 P.2d 292, 293 (1973); *Dick Anderson Constr., Inc. v. Monroe Constr. Co., LLC*, 2009 MT 416, ¶ 46, 353 Mont. 534, 221 P.3d 675.

¶14    We conclude that our review of the District Court's orders resolving the parties' dispute over the interpretation of §§ 67-11-211 and -232, MCA, and other statutes in the Airport Authorities Act would result in yet another advisory opinion resolving a matter in which there is no longer an actual case or controversy, but rather an abstract difference of opinion regarding a moot question. *See Hardy*, 206 Mont. at 525-26, 672 P.2d at 276. We accordingly do not reach the merits of the parties' arguments on appeal.

¶15    While we appreciate the frustration over the language in the statutes as evidenced by the District Court in its decision and the parties in their arguments on appeal, those matters are better addressed to and clarified by the Legislature. Therefore,

¶16    IT IS ORDERED that this cause is dismissed as a nonjusticiable request for an advisory opinion from this Court.

7

¶17    IT IS FURTHER ORDERED that the District Court's March 18, 2009 order and its May 13, 2009 order are vacated.

¶18    IT IS FURTHER ORDERED that this cause is remanded to the District Court for the entry of an order dismissing the action as nonjusticiable.

¶19    IT IS FURTHER ORDERED that the Clerk of this Court serve a copy of this Opinion and Order on all counsel of record, and on the Honorable Jeffrey M. Sherlock, District Court Judge, presiding over Cause No. BDV-2008-882.

DATED this 9th day of February, 2010.

/S/ JAMES C. NELSON

We concur:

/S/ MICHAEL E WHEAT
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JIM RICE

8