No. 05-580

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 44

_____

|  |  |  |  |
|---|---|---|---|
| LINDA K. CLARK, | ) | | |
| | ) | | |
| Petitioner and Appellant, | ) | | |
| | ) | | |
| v. | ) | **O P I N I O N** | |
| | ) | **&** | |
| ROOSEVELT COUNTY, acting | ) | **O R D E R** | |
| through the BIG MUDDY RIVER | ) | | |
| DRUG TASK FORCE, | ) | | |
| | ) | | |
| Respondent and Respondent. | ) | | |
| | ) | | |

_____

¶1      Linda K. Clark ("Clark") appeals from the Order of the District Court for the Fifteenth Judicial District, Roosevelt County, denying her Petition for the release of her property that was seized in connection with a drug investigation.  The State filed a Motion seeking dismissal of Clark's appeal.  After Clark filed her response, we initially denied the Motion.  Upon further consideration, however, we conclude that the State's Motion is well taken.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2      During the time period relevant to this case, Clark owned the Log Cabin Bar, which is located in Poplar, and she had acquired a Montana liquor license.  In late 2004, an informant reported to law enforcement officials that methamphetamine was being distributed from the bar.  Consequently, an investigation was conducted by federal agents

1

and the Big Muddy River Drug Task Force ("Task Force") which, according to the record before us, is an entity comprised of a number of eastern Montana counties and police departments, as well as the Fort Peck Tribes. During the investigation, officials arrested an individual who admitted that he had delivered methamphetamine to Clark at her bar.

¶3 Thereafter, Fred Hofman ("Hofman"), the Roosevelt County Attorney, and Craig Haller, an Assistant U.S. Attorney, advised the Task Force that Clark's bar was subject to forfeiture. Accordingly, Terry Boyd ("Boyd"), who is an agent for the Task Force, a supervisory criminal investigator for the Fort Peck Tribes, and Undersheriff for Roosevelt County, took action on behalf of the Task Force. On June 21, 2005, without a warrant, Boyd seized the bar, the contents therein, and Clark's liquor license. In doing so, he was accompanied by John Morton, an agent of the Federal Bureau of Investigation. The record does not disclose whether any illegal drugs or drug paraphernalia were found in the bar. Nor does the record disclose whether Clark was ever charged with an offense in state or federal court.

¶4 Approximately one week later, Clark filed a Petition in District Court seeking the release of her property. With this Petition, Clark claimed that no probable cause existed to justify the seizure. She named the respondent as "Roosevelt County, acting through the Big Muddy River Drug Task Force." Hofman filed a response on behalf of Roosevelt County, asserting that Clark's requested relief could not be granted because her property was seized not by the County, but by the Task Force.

¶5 At a hearing held on July 7, 2005, the District Court acknowledged that Clark may have incorrectly named Roosevelt County as the respondent, and that she may be

2

required to pursue relief in federal court. However, without determining whether Roosevelt County was properly named as the respondent, and without reaching a conclusion as to the issue of jurisdiction over Clark's Petition, the court inexplicably proceeded to hold a probable cause hearing. During the course of that hearing, Boyd testified regarding evidence that officials had compiled during the investigation of activities at Clark's bar. Boyd also testified that the Task Force intended to allow Clark's bar to proceed through forfeiture proceedings in state court. Then, after considering arguments by counsel, the court ruled that probable cause existed for the seizure of Clark's property. The court subsequently entered its Order reiterating this ruling and consequently denying Clark's Petition.

¶6 Following the court's ruling, Hofman filed a Petition for Forfeiture in the District Court, on behalf of the Task Force, formally seeking forfeiture of Clark's seized property. Then, in September of 2005, the bar was destroyed by a fire that spread from an adjacent building. Consequently, in January of 2006, Hofman moved to withdraw the Petition for Forfeiture in its entirety. This Motion stated that the Task Force no longer had an interest in pursuing forfeiture of the real property, and further stated: "The drug investigation involved in this matter is a federal one and the case will be brought in federal court. Therefore . . . the federal government will handle the forfeiture of the liquor license when the case is indicted in federal district court." Accordingly, the District Court dismissed the Petition for Forfeiture.

¶7     Clark now appeals from the District Court's previously issued Order denying her Petition for the release of her property.[1]

**DISCUSSION**

¶8     On appeal, Clark argues the District Court erred in determining that the Task Force had probable cause to seize her property.[2]  After Clark filed her initial brief with this Court, the State filed its Motion seeking dismissal of the appeal.  The State argued, inter alia, that Clark's challenge to the District Court's conclusion was rendered moot by virtue of the dismissal of the Task Force's Petition for Forfeiture.  We denied the State's Motion, indicating that the issue of the seizure, as distinct from the issue of forfeiture, was appropriate for resolution on appeal.  However, after considering the parties' briefs on the merits, we now reconsider the State's Motion.

---

[1]  The record before us does not precisely disclose all the property at issue.  While Clark expressly sought the release of her liquor license, the Log Cabin Bar, and the contents therein, her Petition does not specify the contents of the bar.  Rather, Clark attached a document that supposedly lists these items.  However, this document is illegible and we therefore cannot discern exactly what property the Task Force seized.  (Clark's Petition also referred to a gambling license.  However, no further such references appear anywhere else in the record.)  Additionally, the record does not disclose whether the contents of the bar were removed when seized, or whether they were lost in the fire that destroyed the bar.  Thus, we can not discern whether there is anything left to return to Clark, other than the land underlying the previously existing structure and perhaps the liquor license.  Yet, while the parties refer to the seizure here as encompassing Clark's liquor license, the record does not disclose whether the Task Force simply seized the certificate memorializing this state-issued license, or whether Clark's authorization to serve alcohol has somehow been officially suspended or revoked.  Additionally, we note that because the issue is not raised in this appeal, our Opinion here is not a comment on the question of whether the statutory scheme addressed below, which provides for the seizure of certain property, actually allows for the seizure of a liquor license.

[2]  Clark also argues that Montana's statutory scheme governing property seizures relating to drug offenses (as delineated in Chapter 12 of Title 44, MCA) is unconstitutional.  However, we decline to address this argument because she did not raise it in the District Court.  *DeShields v. State*, 2006 MT 58, ¶ 6, 331 Mont. 329, ¶ 6, 132 P.3d 540, ¶ 6.

¶9 We begin by briefly reviewing the relevant statutory framework. In pertinent part, § 44-12-102(1), MCA, provides:

> **Things subject to forfeiture.** (1) The following are subject to forfeiture:
> . . . .
> (h) any personal property constituting or derived from proceeds obtained directly or indirectly from a violation of Title 45, chapter 9, [which outlines offenses involving dangerous drugs,] that is punishable by more than 5 years in prison; and
> (i) real property, including any right, title, and interest in any lot or tract of land and any appurtenances or improvements, that is directly used or intended to be used in any manner or part to commit or facilitate the commission of or that is derived from or maintained by the proceeds resulting from a violation of Title 45, chapter 9, that is punishable by more than 5 years in prison. An owner's interest in real property is not subject to forfeit by reason of any act or omission unless it is proved that the act or omission was the owner's or was with his actual knowledge or express consent.

Section 44-12-103(2)(d), MCA, provides that all property subject to forfeiture pursuant to § 44-12-102, MCA, may be seized without a warrant if "the peace officer has probable cause to believe that the property was used or is intended to be used in violation of Title 45, chapter 9, or in violation of Title 45, chapter 10, part 1 [which outlines offenses involving drug paraphernalia]." Unless the seized property is a controlled substance, a petition to institute forfeiture proceedings must be filed in district court within forty-five days of the seizure. Section 44-12-201, MCA.

¶10 After the petition and a summons is properly served on all owners or claimants of the seized property pursuant to § 44-12-201, MCA, an owner or claimant must, within twenty days after service, file a verified answer to the allegations regarding the use of the property contained in the petition. Section 44-12-202, MCA. If a verified answer is not filed within this twenty-day time period, the district court shall, upon motion, order the

5

property forfeited to the State. Section 44-12-203(2), MCA. Conversely, if a verified answer is filed within this twenty-day time period, the forfeiture proceedings must be set for a hearing, without a jury, no sooner than sixty days after the answer is filed. Section 44-12-203(3), MCA. Then, if the court finds that the property was used for the purpose charged, the property shall be disposed of in accordance with several statutory provisions. Section 44-12-205(2), MCA. However, if the court finds that the property was not used for the purpose charged, it shall order the property released to the owner of record as of the date of the seizure. Section 44-12-205(1), MCA.

¶11 With this statutory framework in mind, we now consider the propriety of Clark's appeal. The existence of a justiciable controversy is a threshold requirement to a court's adjudication of a dispute. *Havre Daily News, LLC v. City of Havre*, 2006 MT 215, ¶ 18, 333 Mont. 331, ¶ 18, 142 P.3d 864, ¶ 18. A justiciable controversy is one upon which a court's judgment will effectively operate, as distinguished from a dispute invoking a purely political, administrative, philosophical or academic conclusion. *Seubert v. Seubert*, 2000 MT 241, ¶ 20, 301 Mont. 382, ¶ 20, 13 P.3d 365, ¶ 20.[3] Where a court's judgment will not effectively operate to grant relief, the matter is moot. *Walker v. State*, 2003 MT 134, ¶ 40, 316 Mont. 103, ¶ 40, 68 P.3d 872, ¶ 40. Lacking the provision of any relief, a decision on the merits of the issue raised would be merely advisory. We

[3] A justiciable controversy is comprised of three elements in all, the additional elements being articulated as follows: (1) the parties must have existing and genuine, as distinguished from theoretical, rights or interests; and (2) the controversy must be one upon which a judicial determination will have the effect of a final judgment in law or decree in equity upon the rights, status or legal relationships of one or more of the real parties in interest, or lacking these qualities, be of such overriding public moment as to constitute the legal equivalent of all of them. *Seubert*, ¶ 20. These two additional elements, however, are not pertinent to the resolution of Clark's appeal.

have consistently held that this Court will not render advisory opinions. *State v. Holland*, 1998 MT 67, ¶ 6, 288 Mont. 164, ¶ 6, 955 P.2d 1360, ¶ 6.

¶12    Here, after the Task Force ceased its efforts in the forfeiture proceeding, the District Court dismissed the Petition for Forfeiture. As the above noted statutes indicate, while law enforcement officials may seize property without a warrant in certain circumstances, they are not free to simply hold seized property indefinitely. Rather, a forfeiture proceeding must be initiated within forty-five days of the seizure, and that proceeding necessarily leads to either a forfeiture of the seized property or a release of the property to the owner. Thus, when the Petition for Forfeiture was dismissed, Clark was entitled to the release of her property, as far as Montana law is concerned.[4] In light of this circumstance, a judgment by this Court regarding the issue raised on appeal—i.e., whether the District Court erred in determining that probable cause existed for the seizure of Clark's property—would have no practical impact on the matter of Clark's entitlement to have her property returned. Rather, our judgment on the issue of probable cause would merely be an academic exercise. Therefore, the issue is moot, and no justiciable controversy is presently before us.[5]

---

[4]    On appeal, Clark asserts that her property has not yet been returned to her. Perhaps this is because the District Court failed to address the disposition of Clark's property when dismissing the Petition for Forfeiture, noting only: "By statute, the property is no longer subject to forfeiture upon this dismissal in state proceedings and if the property is to be forfeited at all, it will need to be forfeited federally." Or, perhaps the Task Force delivered Clark's property to federal authorities to be held in conjunction with a federal investigation, which was apparently ongoing at the time of dismissal. The record is not clear on this issue.

[5]    We note that Clark's Petition for the release of her property was docketed under a different cause number than that assigned to the Task Force's Petition for forfeiture of the same property. Nonetheless, given the statutory scheme noted above, Clark's effort to retrieve her property cannot be considered in isolation, distinct from the forfeiture proceeding.

¶13 We offer no opinion on whether a justiciable controversy exists with respect to the destruction of Clark's bar while it was being held by the Task Force. Indeed, Clark indicates that she intends to seek damages for this loss. However, any cause of action she may choose to pursue in that regard is not the subject of the case presently before us, and our decision here does not preclude any such civil action. Rather, we are faced only with the issue of the seizure and forfeiture proceeding conducted pursuant to Chapter 12 of Title 44, MCA.

¶14 Because the issue raised on appeal is moot, any opinion we could render on the merits would be advisory in nature. As noted above, this Court does not render advisory opinions. *Holland*, ¶ 6.

¶15 Accordingly, the State's Motion to Dismiss is hereby GRANTED, and Clark's appeal herein is dismissed with prejudice.

DATED this 21st day of February, 2007.

/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE